UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC ORTHOPAEDIC ASSOCIATES, LLC, a/a/o L.S.,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF TEXAS and EXPRESSJET AIRLINES,<br><br>Defendants. | Civ. No. 15-cv-1854 (KM)<br><br>**MEMORANDUM OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

**I.   Introduction**

Defendant Blue Cross and Blue Shield of Texas ("Blue Cross")[1] administers, to an undetermined degree, a self-funded health plan (the "Plan") maintained by defendant ExpressJet Airlines ("ExpressJet"). ExpressJet is the employer of L.S., who is a member of the Plan. The plaintiff, Atlantic Orthopaedic Associates, LLC ("Atlantic"), an out-of-network health care provider, brings this action as assignee of its patient, L.S. All of Atlantic's claims allege violations of the Employee Retirement Income Security Act ("ERISA"). Each defendant has filed a motion to dismiss Atlantic's complaint for lack of standing under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (ECF nos. 10, 19) For the reasons that follow, I will deny the motions.

---

[1]   Blue Cross is a division of Health Care Service Corporation, sometimes referred to in the papers as HCSC. For ease of reference, I will refer to this defendant as Blue Cross.

1

### A.   The complaint

The allegations of the complaint ("Cplt.," ECF no. 1) may be briefly summarized as follows.

ExpressJet has a health plan that covers its employees, including "L.S." (*See* Cplt. ¶¶ 8, 10, 12, & *passim*) Blue Cross allegedly administers the Plan. (Cplt. ¶¶ 10, 26–27) With respect to ExpressJet's Plan, Atlantic is an out-of-network provider. (Cplt. ¶ 14) In January 2013, Atlantic, a New Jersey medical provider, rendered surgical services to L.S. in New Jersey. (Cplt. ¶¶ 1, 8)

Bills for the surgical services, amounting to $42,825.00, were submitted to Blue Cross. Blue Cross paid a reimbursement in the amount of $3,952.60, leaving a balance of $38,872.40 unpaid. (Cplt. ¶¶ 13, 15)

Atlantic filed administrative appeals on behalf of L.S., pursuant to an assignment of benefits from L.S. These were denied on various grounds. (Cplt. ¶¶ 16–18)

Atlantic requested all documents relied upon by Blue Cross in making its decision, including the Employee Benefits booklet. Blue Cross directed Atlantic to its New Jersey affiliate, which did not respond. (Cplt. ¶¶21–32)

Count 1 asserts that the failure of Blue Cross to provide documents, including the Master Plan Document, Summary Plan Description, Employee Benefits booklet, and any other documents on which the relevant decision was based, constituted a violation of 29 C.F.R. § 2560.503-1(j)(3). This Count seeks disclosure of the documents, plus damages of $110 per day, costs, and attorney's fees. (Cplt. ¶¶ 33–39)

Count 2 asserts that defendants have arbitrarily made adverse benefits determinations in violation of their "legal obligations under ERISA, its governing regulations and federal common law by not properly paying claims in accordance with the terms of the relevant plan documents and/or in violation

of ERISA." This Count seeks damages of $38,872.40, costs, and attorney's fees. (Cplt. ¶¶ 40–43)

Count 3 asserts that defendants are ERISA fiduciaries. As such, they are bound to act prudently, in accordance with the provisions of the Plan (citing 29 U.S.C. § 1104(a)(1)(B) & (D)), and to act with loyalty to the interest of members, and without self-dealing (citing 29 U.S.C. § 1106). The underpayment of the claim allegedly violated those duties. Count 3 seeks the same relief as Count 2. (Cplt. ¶¶ 44–49)

### B. Standard on a motion to dismiss

Defendants have moved to dismiss the Complaint for lack of jurisdiction, asserting that Atlantic lacks standing to assert claims on behalf of L.S. Rule 12(b)(1) governs such jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

Defendants have also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515

3

F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Certain extrinsic documents may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, the defendants attach a copy of a document entitled "Your Health Care Benefit Program." (ECF no. 15) I may consider that document because the Plan is cited in the Complaint, is integral to the Complaint, and is the very foundation of the plaintiff's claim.[2]

---

[2] Where a complaint is based on a particular document, a defendant may submit and rely on that document in its motion to dismiss. The reasons for the rule are (1)

4

## II. Analysis

### A. Assignments and Standing

Defendants move to dismiss the complaint on jurisdictional grounds, pursuant to Rule 12(b)(1), Fed. R. Civ. P. They contend that Atlantic lacks standing to pursue these ERISA claims.

ERISA confers standing to sue on a plan "participant" or "beneficiary," or "fiduciary." ERISA § 502(a), 29 U.S.C. § 1132(a); *see Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d. 393, 400-401 (3d Cir. 2004). Concededly, Atlantic is none of these things. Rather, it sues pursuant to an assignment of benefits from a plan beneficiary: its patient, L.S.

Whether an assignment of benefits grants a health care provider standing to pursue a patient's ERISA claim for benefits is no longer controversial. In 2013, I wrote that this issue had divided the judges of this District, but that the Third Circuit had not spoken definitively. *See NJSR Surgical Center, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.,* 979 F. Supp. 513, 522-24 (D.N.J. 2013) (citing cases, but noting that the assignment proffered by plaintiff would likely suffice, and permitting amendment). Events have overtaken us. The Third Circuit has decided cases, both precedential and non-precedential, which have brought more clarity to the issue. *See, e.g., N.J. Brain & Spine Ctr. v. Aetna, Inc.,* 801 F.3d 369 (3d Cir. 2015); *American Chiropractic Ass'n v. American Specialty Health Inc.,* 625 F. App'x 169 (3d Cir. 2015).

---

that the plaintiff, having relied on the document, cannot claim unfair surprise; and (2) the plaintiff cannot base a claim on a document while shielding the document itself from view:

> What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Burlington,* 114 F.3d at 1426 (on 12(b)(6) motion to dismiss securities fraud complaint alleging misstatements in annual report, court may examine the report itself).

5

In *N.J. Brain & Spine,* the Third Circuit accepted the provider's position that "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a). An assignment of the right to payment logically entails the right to sue for non-payment." 801 F.3d at 372. In *American Chiropractic,* the Third Circuit applied and elaborated on its earlier holdings:

> We recently held that an assignment of the right to payment also assigns the right to enforce that right by bringing suit under ERISA to collect money owed. *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, No. 14–2101, 801 F.3d 369 (3d Cir. 2015). Such an assignment "serves the interest of patients by increasing their access to care" and reduces the likelihood of medical providers "billing the beneficiary directly and upsetting his finances." *CardioNet*, 751 F.3d at 179 (quotation marks omitted). Moreover, the right to enforce recognizes that, as compared to patients, most providers "are better situated and financed to pursue an action for benefits owed for their services." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352–53 (11th Cir. 2009) (quotation marks omitted).

625 F. App'x at 174–75. *American Chiropractic* non-precedentially but persuasively held that the doctor/assignee's standing to sue did not depend on whether the patient remained financially responsible under the terms of the assignment. *Id.* at 175.

All very well, say Defendants. But the Plan at issue here contains an explicit anti-assignment provision which trumps those general holdings. Although rights to pursue ERISA claims *may* be validly assigned, that does not mean that they *were* validly assigned.

The anti-assignment provision in the Plan reads as follows:

> Except as provided in the section **Assignment and Payment of Benefits**, rights and benefits under the Plan are not assignable, either before or after services and supplies are provided.

(Plan summary p. 12, ECF no. 15 at 22) The cited section on Assignment and Payment of Benefits reads as follows:

**Assignment and Payment of Benefits**

Rights and benefits under the Plan shall not be assignable, either before or after services and supplied are provided.

In the absence of a written agreement with a Provider, the Claim Administrator reserves the right to make benefit payments to the Provider or the Employee, as the Claim Administrator elects. Payment to either party discharges the Plan's responsibility to the Employee or Dependents for benefits available under the Plan.

(Plan summary p. 55, ECF no. 15 at 65) Atlantic does not deny the existence of the anti-assignment provision. (ECF no. 14 at 7–8)

The Third Circuit has not spoken on the issue of whether ERISA, or the important pro-patient policies served by permitting assignments, will outweigh an anti-assignment provision. It must be said that the weight of authority appears to be in defendants' favor; many cases have given effect to anti-assignment provisions and denied standing. Judge Chesler of this Court, in *Neurological Surgery Associates P.A. v. Aetna Life Ins. Co.*, No. CIV.A. 12-5600 SRC, 2014 WL 2510555, at *2-4 (D.N.J. June 4, 2014), has collected some of them, including the following: *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464–65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); *Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004). And such anti-assignment provisions seem to pass muster as a matter of state contract law. *See Somerset Orthopedic Associates, P.A. v. Horizon Blue Cross & Blue Shield of New Jersey*, 345 N.J. Super. 410, 419, 785 A.2d 457, 462 (App. Div. 2001).

7

Nevertheless, Atlantic stresses that the effect, or not, of such an anti-assignment provision cannot be settled on the current record, which is confined to the face of the complaint plus a copy of the Plan document. It is a matter of contract interpretation, and, more importantly, it requires an assessment of the conduct of the parties. It has been held, for example, that a party can waive an anti-assignment provision via a "written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-à-vis the assignee." *Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-0462(JAG), 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007) (Greenaway, J.). Facts relevant to such a waiver may include "discussions of patient coverage under health care policies, direct submission of claim forms, direct reimbursement of medical costs, and engagement in appeal processes." *Id.* at *4. Other cases holding that the administrator may waive an anti-assignment clause via a course of dealing with the assignee include *N. Jersey Brain & Spine Ctr. v. Saint Peter's Univ. Hosp.*, No. CIV.A. 13-74 ES, 2013 WL 5366400, at *7 (D.N.J. Sept. 25, 2013); *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. CIV.A. 11-425 ES, 2012 WL 1135608, at *9 (D.N.J. Apr. 4, 2012); *Cohen v. Independence Blue Cross*, No. 10–4910, 2011 WL 5040706, at *8 (D.N.J. Oct.24, 2011); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. 06–928, 2007 WL 2416428, at *4 (D.N.J. Aug.20, 2007); *Briglia v. Horizon Healthcare Svcs., Inc.*, No. 03–6033, 2005 WL 1140687, at *4–5 (D.N.J. May 13, 2005).

To be sure, there are cases to the contrary. So holding, and citing significant case law in support, is *Advanced Orthopedics & Sports Medicine v. Blue Cross Blue Shield of Massachusetts,* No. 14-7280, 2015 WL 4430488 (D.N.J. July 20, 2015) (no waiver of no-assignment clause by virtue of dealing with the assignee without objection).

Here, Atlantic says in its brief that it sent the bills to, and received reimbursement from, Blue Cross. (Actually, the Complaint states only that the Plaintiff's bills "were submitted" to Blue Cross, which accepted them for

(partial) reimbursement, and that Blue Cross "allowed reimbursement." (*See* Cplt. ¶¶ 13, 15.)) Atlantic filed administrative appeals with Blue Cross, pursuant to an assignment of benefits from L.S. Blue Cross denied the appeals, but not on the basis that Atlantic was a third party interloper. (Cplt. ¶¶ 16–18)

Atlantic contacted Blue Cross and asserted the right of L.S. under ERISA to be furnished certain relevant documents. Blue Cross allegedly directed Atlantic to its New Jersey affiliate, which did not respond. There is no indication that its refusal was based on any objection to Atlantic's status as assignee. (Cplt. ¶¶21–32)

Is waiver proven? By no means. But I agree with Judge Martini's statement in *Premier Health Center, supra*, that the issue is fact-intensive and cannot be settled solely in reference to one or two facts. Waiver is adequately suggested by the allegations of the complaint, and may be explored further in discovery. Before passing on the question of waiver (or equitable estoppel, a related doctrine) I would need a far more complete record of the course of dealing between Atlantic and Blue Cross.[3]

The motion to dismiss the complaint for lack of standing is denied.

### B. Whether Blue Cross is plan administrator

Count 1 seeks penalties against defendants for failure to supply documentation under Section 502(c)(1)(B) of ERISA. Blue Cross moves to dismiss Count 1 on the grounds that it is not a "plan administrator," but merely a third party claims processor or administrator, and therefore cannot be liable.

ERISA § 503-1(j)(3) imposes a requirement on each ERISA plan administrator to provide, "[a] statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." A plan "administrator" is: "(i) the person specifically so designated by

---

[3] At any rate, should standing be lacking, presumably Atlantic can easily remedy the situation by joining L.S. herself as plaintiff.

9

the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A).

Blue Cross states that the question is settled by alternative (i), the specific designation of a plan administrator. It points to the Plan summary, which explicitly provides that Blue Cross is *not* the administrator: "Plan Administrator means the Group Health Plan (GHP) or a named administrator of the Plan having fiduciary responsibility for its operation. BCBSTX [*i.e.*, Blue Cross] is not the Plan Administrator." (Plan Summary p. 53, ECF no. 15 at 63).

That is good evidence, to be sure, but is not conclusive at the pleading stage. The complaint alleges that Blue Cross is a "Health Insurer and/or Plan Administrator." This means, says Atlantic, that Blue Cross was delegated broad authority, and was the *de facto* plan administrator. The key is the exercise of discretion. *See, e.g., Law v. Ernst & Young,* 956 F.2d 364, 373 (1st Cir. 1992); *Rosen v. TRW, Inc.,* 979 F.2d 191 (1992). It is not implausible that an administrator could attempt to shield itself from liability through a disclaimer in the plan documents, while still retaining broad discretion. And Atlantic cites the January 2013 Summary Plan Document, which, it says, grants Blue Cross significant control.

I will therefore deny the motion to dismiss on this ground, without prejudice to renewal of these contentions on summary judgment.

### C.   Failure to state claim for fiduciary breach

Count 3 alleges that the underpayment of the L.S. claim constituted a breach of defendants' fiduciary duty of loyalty. Both defendants move to dismiss Count 3 for failure to state a claim.

A fiduciary claim is appropriate where recovery for the alleged fiduciary breach "[i]nures to the benefit of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). It is in the nature of a derivative action on behalf of the Plan. *See Graden v. Conexant Sys., Inc.*, 496 F.3d. 291, 295 (3d Cir. 2007). Here, say Defendants, Atlantic merely seeks recovery based on an alleged underpayment of benefits.

Defendants add that, at any rate, Count 3 seeks no independent equitable relief, but is entirely duplicative of Count 2, which directly alleges underpayment of benefits and seeks damages. (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512(1996) (noting that § 502(a)(3) is a "'catchall' provision []...[that] acts[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy"); *Stallings ex rel. Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905371 at *10 (D.N.J. Sept. 8, 2009)).

Defendants' contention that Count 3 is duplicative and does not inure to the benefit of the Plan may or may not be correct. That cannot be determined from the face of the complaint. Accordingly, the motion to dismiss Count 3 for failure to state a claim is denied.

### D. Failure to state claim for ERISA statutory penalties (Count 1)

Count 1 asserts that the failure of Blue Cross to provide documents, including the Master Plan Document, Summary Plan Description, Employee Benefits booklet, and any other documents on which the relevant decision was based, constituted a violation of 29 C.F.R. § 2560.503-1(j)(3). This Count seeks, *inter alia*, a penalty of $110 per day. ExpressJet moves to dismiss Count 1 for failure to state a claim.

> Section 104(b) (4) of ERISA [29 U.S.C. § 1024(b)(4)] provides that an "administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other

11

> instruments under which the plan is established or operated." § 1024(b)(4). A breach of this provision is actionable under § 502(c)(1), which after 30 days permits a participant or beneficiary to recover a statutory penalty for each day the requested information is not provided. § 1132(c)(1). The purpose behind § 502(c)(1) is to "induce plan administrators to comply with ERISA's disclosure provisions, and not to make a participant whole." *Maiuro v. Federal Express Corp.*, 843 F. Supp. 935, 943 (D.N.J.1994) (citing *Groves v. Modified Retirement Plan for Hourly Paid Employees of the Johns Mansville Corp.*, 803 F.2d 109, 117 (3d Cir.1986)).

*Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. CIV. 08-3121, 2009 WL 2905471, at *11 (D.N.J. Sept. 8, 2009).

ExpressJet essentially argues that it is "conceded" that it (not Blue Cross, apparently) supplied the Summary Plan Description, and that it can be gleaned that the Benefits Booklet is same document. The allegations, says ExpressJet, do not establish nondisclosure or untimely disclosure.

The complaint adequately alleges that Atlantic requested such documents. It alleges that they were not supplied. Atlantic also alleges that it requested, not only constitutive Plan documents, but also all documents relied on by Blue Cross in making the decision. Many hurdles stand between such an allegation and ultimate recovery, but the claim is adequately alleged.

The motion to dismiss Count 1 for failure to state a claim is denied.

### E. Appropriateness of ExpressJet as defendant in Count 2

Count 2, says ExpressJet, is properly directed not to itself but only to Blue Cross. The proper defendant, it says, is "the plan itself or the person who controls the administration of benefits under the plan." *See Evans v. Employee Benefit Plan,* 11 F. App'x 556, 558 (3d Cir. 2009). The plaintiff replies that ExpressJet is the plan sponsor and administrator, although one that has delegated many functions to Blue Cross. Without factual development, the appropriateness, or not, of suing ExpressJet (or for that matter Blue Cross) on this claim cannot be determined.

ExpressJet's motion to dismiss Count 2 for failure to state a claim is denied.

### F.   Recovery of "compensatory damages"

ExpressJet faults Atlantic for pleading in Count 2 that it seeks "compensatory damages" in the amount of $38,872.40. It points out that ERISA § 502(a)(1)(B) authorizes only an action to recover benefits, to enforce rights, or to clarify rights to future benefits, under a Plan. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145–48 (1985) (no consequential or extra-contractual damages).

ExpressJet is being hypertechnical. It is perfectly clear what the alleged damages consist of. Allegedly, bills for the surgical services, amounting to $42,825.00, were submitted to Blue Cross. Blue Cross paid a reimbursement in the amount of $3,952.60. The balance of unpaid benefits is $38,872.40. (Cplt. ¶¶ 13, 15) It is alleged to be an underpayment of benefits under the Plan.

The motion to dismiss, as directed to "compensatory damages," is denied.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the complaint (ECF nos. 10, 19) are denied.

Dated: March 7, 2016

_____
KEVIN MCNULTY
United States District Judge

13